GODFREY FRANK ET AL. *v.* F. C. WEBB ET AL.

1. INFANT. *Service of process. Guardian ad litem. Parent or guardian in this state.*

   Service of process in Tennessee on minor defendants to a suit in this state, when it has not been made to appear that there is no father, mother, or guardian in this state upon whom process may be served, does not give the court jurisdiction as to such minors, or authorize the appointment of a guardian *ad litem* for them. *Erwin* v. *Carson,* 54 Miss. 282, cited.

2. PARTNERSHIP. *Services of partner. Compensation therefor.*

   Without an agreement authorizing it, a partner cannot charge the firm or co-partners for services. Though such services are rendered in the firm business, this is not alone sufficient; it is incumbent on the partner asserting a claim to show a contract or agreement by which he is entitled to compensation for services so rendered.

3. SAME. *Evidence. Statements of bookkeeper. Hearsay.*

   In a suit against surviving partners by the representatives of a deceased

partner, proof of statements made by a former bookkeeper of the firm, to the effect that such partner had a salary, is incompetent.

4. Same. *Proof of salary in another firm. Insufficient evidence.*
   In such suit, to establish an agreement for compensation, it is insufficient to show that the deceased partner received a salary for similar services as managing partner in a firm of which defendant's firm was the successor.

5. Same. *Salary of partner. Case in judgment.*
   In such an accounting the representatives of the deceased claimed 12 years' salary, on account of his services as managing partner. There was no direct evidence of an agreement for compensation. It was shown that he received a salary as managing partner in a firm of which defendant's firm was successor. There was also evidence of the hear-say statement of a former bookkeeper of defendant's firm, that deceased had a salary in it ; but this was denied, and it was shown that the books of the firm were kept under the supervision of the deceased as managing partner for the entire 12 years, statements from time to time being furnished the other partners, who were non-residents, and no entry was ever made crediting the salary. *Held*, that the claim could not be maintained. So held also in respect to 10 years' salary of deceased as postmaster, which it was claimed had been used in the business, such salary for the first two years being credited, and no credit for the subsequent years having been entered, either on the books or the statements furnished the other partners.

From the chancery court of Bolivar county.

Hon. W. R. Trigg, Chancellor.

In July, 1885, F. C. Webb, administrator, and the heirs-at-law of J. W. Lyman, deceased, filed their bill in the chancery court of Bolivar county, against Godfrey Frank, Henry Frank, and Joseph Sugarman for an accounting of the partnership business of J. W. Lyman & Co., a firm lately before then engaged in trade, composed of said Lyman, in his lifetime, and the defendants. The bill charged that the firm of J. W. Lyman & Co. was formed in the year 1873, and that the business continued until Lyman's death in April, 1885 ; that the two Franks and Sugarman were non-residents and actively engaged in other pursuits elsewhere, and that Lyman was managing partner until his death ; that Lyman had a half interest therein, and was to receive $100 per month for his services ; that the firm was indebted to Lyman's estate in the

sum of $12,000 or more; that the defendants had pretended to purchase the stock of goods on hand at Lyman's death for a grossly inadequate price, and that they had formed a partnership with one Allen and were carrying on business with him under the firm name of D. J. Allen & Co., and that they were using the stock of goods and assets of Lyman & Co., and occupying and using the store-house and premises of Lyman & Co., in carrying on such new partnership business; that defendants were fraudulently failing to credit him with the $100 per month as compensation for his services, and with money due him as postmaster used in their firm business, and by fraudulently charging Lyman & Co. with debts pretended to be due Fader, Frank & Co., and Frank & Co.

The answer of the defendants denies each charge of fraud, and every statement showing liability on them; denies that Lyman had other than a half interest in the profits of the business, and avers that the defendants owned all the capital in the venture; denies that Lyman was to receive $100 per month, or any other sum, for his services; denies that the firm is indebted to Lyman in any amount whatever, but alleges that Lyman is indebted to the firm; denies that the defendants had anything to do with money due Lyman as postmaster, and charges that if he used it for the firm and as a credit to himself, he should have made the proper entries on the firm books to show this; denies taking the stock of goods fraudulently, but admits purchasing Lyman's interest at a fair valuation, fixed by three persons appointed by the chancery court for that purpose; denies that they are fraudulently charging J. W. Lyman & Co. with debts pretended to be due Fader, Frank & Co., and Frank & Co.; denies that they are illegally using the store-house and lands of Lyman & Co.; and avers that none of the defendants ever drew out a dollar from the business of Lyman & Co., but that Lyman drew out about $6000, as shown by the books of the firm, and that the books were always kept in Lyman's care and under his direction.

The defendants then made their answer a cross-bill, and charge: that Lyman entered into business at Australia with one Shepherd and one Brown, and that defendants loaned him $1136 with which

to begin the business; that in 1873 Shepherd retired from the business, and that Frank & Co. again loaned Lyman money, $900, with which to pay Shepherd; that soon afterwards defendants purchased Brown's interest for $3000, and so formed the partnership of J. W. Lyman & Co.; that Lyman was to have a half interest in the profits, he claiming no interest in the capital whatever; that defendants accepted the statements made up from the books of Lyman & Co. each year as showing the true condition of the business, and that they only learned after Lyman's death that more than half of the assets were worthless; that the stock of goods of Lyman & Co. was worth $4942, and the total amount of debts due Lyman & Co., estimated to be probably good (depending on future contingencies), was $12,384, and that in this was included the indebtedness of $6413 due the firm by Lyman individually, and that there are lands worth $7000 or $8000, and other nominal and worthless assets amounting to $29,549; that the liabilities of J. W. Lyman & Co. amount to $12,380, and that thus Lyman is shown to be in debt to the firm.

The answer to the cross-bill substantially denies the statements therein.

In February, 1889, the death of Sugarman and Henry Frank, two of the defendants, was suggested, and the court entered an order reviving the suit against the numerous adult heirs of the deceased defendants, who entered an appearance by their solicitor, and a guardian *ad litem* for the two minor heirs of Henry Frank, deceased, was appointed, the order of appointment reciting that these minors, with their legal guardian, had been legally cited to appear. Proofs were taken, and, after two references, the clerk as master and commissioner, under peremptory and explicit directions from the court, presented an account, showing a balance due from the defendants to the complainants of $14,575. To the report of the commissioner defendants filed numerous exceptions, and thereupon moved the court to set aside the order of reference and remand the cause for further proofs. The exceptions were overruled and the motion denied.

There was then a decree against the defendants for $14,575, and

dismissing the cross-bill.    From this decree the defendants appeal.
The other facts necessary to an understanding of the case are
stated in the opinion of the court.

*F. A. Montgomery* and *Miller, Smith & Hirsh,* for appellants.

*Calhoon & Green,* for appellees.

Argued orally by *F. A. Montgomery* and *Jos. Hirsh,* for appel-
lants, and by *M. Green,* for appellees.

(Reporters were unable to obtain briefs of counsel.)

WOODS, C. J., delivered the opinion of the court.

This is an appeal from the decree of the chancery court of Bolivar
county, by which appellants are required to pay appellees about
$14,575.   Nearly thirty causes are assigned for error, but a full and
thorough examination of the voluminous record makes it apparent
that we need consider a few only, in order to reach a proper con-
clusion.

It is alleged by counsel for appellants that some of the appellants
against whom the decree was rendered were never before the court.

The record shows that in October, 1888, without any motion or
suggestion from any source, a summons was issued in this cause,
directed to the sheriff of Bolivar county, commanding him to cite
Mrs. Sallie Sugarman and several others, including by name Abe
and Mamie Frank, and their guardian Godfrey Frank, to appear
and show cause why this suit should not be revived against them.
On this process there is no return by the sheriff, but one Frost,
signing himself a deputy sheriff of Shelby county, Tennessee,
endorses thereon a sworn statement that he had, on October 22,
1888, served the citation on Abe Frank and Mamie Frank, and
on Godfrey Frank, their guardian.   On February 4, 1889, more
than three months afterwards, the deaths of Joseph Sugarman and
Henry Frank, two of the original defendants, were suggested, and
by order of the court the cause was revived against their adult heirs,
who entered an appearance by their counsel, and a guardian *ad litem*
was appointed then by the court for the two minors, Abe and Mamie
Frank, the order of the court reciting that these two minors had
already been lawfully summoned.

It is impossible for us to conceive on what ground the court below held that these minors had been legally summoned, or on what ground the court made the appointment of a guardian *ad litem* for them. When the pretended service of the Tennessee deputy sheriff was made, there had been no suggestion made of the death of the parent of the minors, nor anything offered whereby it appeared that the minors had no mother or guardian in Bolivar county, or elsewhere in Mississippi. If the sheriff himself had made the return we are considering, instead of this wholly unauthorized person in Tennessee, the court would have had no power to appoint a guardian *ad litem* for these minors. Before the appointment of the guardian *ad litem*, it should have been shown by the sheriff's return that the minors had no mother or guardian in his county; and, moreover, it should have been made to appear to the court that the minors had no mother or guardian in any other county in this state, as was held by this court in *Erwin* v. *Carson*, 54 Miss. 282. For, until citation had been served on the mother or guardian, or until it had been made to appear to the court below that the minors had no mother or guardian in this state, there was no authority lodged in the court to make any appointment of a guardian *ad litem*.

This error alone would require a reversal of the decree made by the court below; but, as we dissent in other vital particulars from the action complained of in that court, we think it proper to go further, and point out some other errors which contributed to the result reached.

Among other specific instructions given by the court to the clerk and master, in referring the matter to him for the purpose of stating an account between the parties, the clerk was directed to credit the complainants, as Lyman's representatives, with salary due Lyman for twelve years at $900 per annum, and the clerk accordingly reported defendants as due Lyman on this account $10,800, with $713 interest thereon.

It is well settled that no partner can charge his co-partners any sum for his services without an agreement made to that effect, and, further, that it is incumbent on the partner propounding such claim

to compensation to support and establish it. Now, the proofs offered in support of this large demand were statements alleged to have been made by D. J. Allen, the former bookkeeper of the late firm of Lyman & Co., on two or more occasions, that Lyman had a salary of $100 per month, for his services, and the evidence of Shepherd, a partner of Lyman and Brown in the original firm at Australia, that in that business Lyman received $75 per month. We are unable to see on what recognized rule of law Allen's statements are to be made to bind these defendants. We are aware that, in proper limits, principals are bound by the declarations of their agents, but this salutary principle no way affects the statements alleged to have been made by Allen. Besides, it is but fair to say, that Allen, under oath, denied that he made these statements. However that may be, we are clearly of opinion that any statements of this character made by Allen fixed no liability for compensation for Lyman's services on the surviving members of the firm.

The evidence of Shepherd, as to the payment of a salary of $75 per month to Lyman by the former firm of W. R. Shepherd & Co., is wholly insufficient to establish any agreement on the part of the members of the firm of J. W. Lyman & Co., to pay Lyman compensation for his services. But, on the other hand, it appears that the books of Lyman & Co., during the period of twelve years, when that firm was in business, contain no entries evidencing any purpose of Lyman to claim, or any hint of an agreement of his firm to pay him compensation, and these books were kept wholly under Lyman's direction. The annual statements furnished the non-resident partners by Lyman contain no entry of such character, and none of the bookkeepers of the firm ever heard any such claim mentioned by Lyman.

We are clearly of the opinion, therefore, that the charging $10,800 against the appellants on account of salary supposed to be due Lyman was erroneous, as was the $713 interest thereon.

The allowance of $120 per annum for ten years, as money due Lyman on account of salary as postmaster, was likewise error. The proofs show that, during two years, Lyman credited himself

with the earnings of the post-office, on the books of Lyman & Co., but for ten years the books contain no such entries. Let it be conceded that the profits derived from the post-office business went to, and were used by, the firm of Lyman & Co., yet, when we remember that during two of the twelve years Lyman had himself credited with the profits arising from the post-office business, and that during the other ten years he neither made nor claimed any credits on that account; and that, not only the books showed no such claim or entry, but that the annual statements made up and sent the other partners purported to be accurate transcripts from the books and to show the true condition of the business, and that these annual statements were made under Lyman's supervision and management, it is obvious to us that Lyman's representatives and heirs cannot now maintain this claim, and that the action of the court below was erroneous in this particular.

The direction of the court below to the clerk and master, and his action thereunder, in charging appellants with one-half of all the notes and accounts due Lyman & Co., amounting to $5945, and with $1545, interest thereon, in the face of the proofs—the only evidence taken on this point—made by Peake and Allen, that the uncollected debts are worthless, appears to us to be incorrect; and the crediting Lyman's representatives, the appellees, with large sums as interest, and the failure to charge them with any interest on Lyman's debt of $6413, due the firm of J. W. Lyman & Co., is obviously inequitable and erroneous.

We think it unnecessary to consider the many other causes of error assigned, as this opinion, on the several points already considered by us, will meet the requirements of the case in any further proceedings.

*The decree of the chancery court is reversed, and the order appointing the guardian ad litem is vacated and set aside, and the cause is remanded.*